I'm representing the appellants Deep Sea Harvester and Deep Sea Fisheries in this case. In 2000, Congress enacted the Civil Asset Forfeiture Reform Act. This statute provides uniform substantive and procedural law with respect to almost all of the 200-plus federal civil forfeiture statutes. One important change made by CAFRA was the creation of an innocent owner defense. The issue in this appeal is whether the innocent owner defense is available to the claimants in this case. The innocent owner of the innocent owner defense is generally available in all civil forfeitures. The issue in the statute provides that claimants may not assert an innocent owner defense if the property at issue is contraband or other property that is illegal to possess. Thus, the issue in this case is one of statutory construction, whether the king crab is contraband or other property that is illegal to possess. If the king crab falls into this category, the commercial importers who are the claimants in this case cannot raise an innocent owner defense. If the king crab doesn't fall into this category, the claimants will have an opportunity to litigate their innocent owner claims. That is, basically establishing the nature of their ownership of security interest and establishing, if they can, that they did not know and had no reason to know of the violations that are alleged in this complaint. Do I understand your argument correctly that under these circumstances, the crab was not contraband? Yes. Because it's not like heroin, it's not like counterfeit currency, it's not like other things that are contraband per se? Right. Why, then, isn't it property that's otherwise illegal to possess because it's been imported illegally or caught illegally? Well, under the Lacey Act, it's illegal to sell or to import property. But once that happened, the mere possession of that property is not illegal. It's like you can own this property without any consequences. The fact that it was, you know, it may have been illegally imported at one point in its career doesn't mean that it's illegal to possess. Well, don't leave that too quickly. Your argument, in your brief at least, is that somehow this second phrase we use to But I don't know. Is there a case that tells us that we're supposed to interpret it that way? Let me give you the background of the question. Or as disjunctive, a simple reading of the statute would say it's contraband or other property that is illegal to possess. If that's true, then regardless of how you define contraband, which is the majority of the briefs, if it is property that's illegal to possess, then it comes within the statute. Now, isn't this property that's illegal to possess? No, it's not. You can have crab that's stolen or improperly done, and you can have it, it's legal to possess it? If someone had gone and purchased the property, you know, from the importer, and it had been, you know, improperly imported at some point in its life, that person can legally possess the crab. It's not like, you know, stolen property or heroin, you know, the fact that you have it in your hands makes it a crime in itself. So if it's improperly brought into the United States, it's okay? Well, there's consequences for the person who's importing it. He may have committed a Lacey Act violation, but the property can be legally owned by someone further down the food chain without an importer. Your guy's the importer, isn't he? My guy actually was the importer. Well, if you're right, then it's not even subject to forfeiture at all. We don't even get to a defense. Well, I'm no. What makes it subject to forfeiture? Well, it's potentially subject to forfeiture. The government – obviously, this hasn't been proven, but if the property had been involved in some, you know, unknowing Russian fishing violation and my guy imports it, under the structure of the Lacey Act, there's no necessity for shilling a culpability in order to obtain a forfeiture. So my guy, you know, could have imported it, you know, purely innocently, but still been subject to Lacey Act forfeiture under 3374, which basically says the culpability requirements of 3372 don't apply. Well, isn't this a strict liability forfeiture? That is, he doesn't have to use it. Yes, sir. It was created as a strict liability forfeiture, Your Honor. Back in 1982, it was designed. So you don't have a right to possess this as strict liability. Your argument, it seems to me, is that you don't need the innocent exception in this second phase because it can never come into effect in a case such as this. Well, no, because what happened in 2000, when Congress enacted CAFRA, they provided for fairly a uniform innocent owner defense that applied in all cases. They were concerned that there were some statutes out there, many of which, some had partial innocent owner defenses, some had no innocent owner defenses. Some were, you know, some were fully, I guess, strict liability. Some, you know, had some other type of liability attached. And Congress wanted to import a general defense to cover the whole field of statutes. And so I would say that after CAFRA, while this may have been true prior to 2000, after CAFRA, there is an innocent owner defense. There were only a couple of different statutory schemes, forfeiture schemes that were exempted from CAFRA, namely the Customs Laws and the Internal Revenue Code. And the Lacey Act was not among them. Now, returning to your point about Ore being a disjunctive, the pure disjunctive is something like, you know, apples or oranges, you know, two completely dissimilar things. Now, one of the rules of statutory construction, and I think I cited them in my brief, is when one seems to be intending to inform the interpretation of the other, it's proper to look at sort of both sides of the Ore phrase to see how they would have you interpret it. And so the key word in this phrase is the other. And I would say that when you have a situation where you've got, like, oranges or other citrus fruit, you've got a situation where, you know, you've got something that's being defined again by the second part of the phrase. And I think I cited the Microsoft case, and there's an earlier case whose name I don't remember, Lacey or something, that deal with an Ore situation. I think the property at issue in those cases were, you know, films, tapes, or other similar reproductions. And, you know, they use that to interpret the films and tapes as being focused on the media side rather than on the content side. Give me an example of what would fit into the Ore other property that's illegal to possess. We know what contraband is. We'll call that the heroin, the contraband per se. What would fit into the other category? You know, I've sort of struggled with trying to think of examples of things that couldn't also be described as contraband. And most of the things that I've been able to come up with, you know, just sort of doing the mental exercises, you know, people have at some point described it as contraband. Then that gives no effect to what Congress really do, the language Congress uses. Well, I think they were using it to, you know, to really focus. I mean, I guess they thought of a situation, it's possible there would be situations where there was something that people didn't describe as contraband that was somehow illegal to possess. I'm not sure if there are such cases. I'm not a – I've looked, but I haven't found it. Do you agree that Deepsea's mere receipt of this property made it unlawful? No. I would say Deepsea's receipt of the property made it potentially subject to forfeiture. But isn't it unlawful under Lacey Act? If it would be unlawful if – it would be unlawful if Deepsea – it would be a Lacey Act violation if Deepsea knew that the property were in violation of the Lacey Act. And the standards for determining whether it's – it violates the Lacey Act, whether my client has committed a Lacey Act violation are different from determining whether there's a Lacey Act forfeiture possibility. Tell me how Section 3372a2 doesn't apply directly here to make this illegal – an illegal act and holding it subject to forfeiture and therefore come under the disjunctive phrase. Well, 3372 makes – makes it illegal to knowingly import this kind of property. And by necessity. But there's strict liability. No, no, no. Where does the knowingly come? The knowingly imported. 3372 is for the civil and criminal penalties. 3374 provides for the forfeiture. And the forfeiture explicitly states that, you know, forfeiture is to be made without respect to the culpability requirements of 3372. So I would say that it's – there may not have been a Lacey Act violation on my client's part. I suppose it's possible there could have been a Lacey Act violation on the part of the Russian people who transported it, I guess, you know, assisting in the importing or something like that. And the government has remedies there they can go after. The people who they think knowingly violated these statutes. This is not a case without remedies. How do you define contraband, per se? Is it just narcotics? Well, it's stuff that, you know, people can't possess. I guess there's narcotics, there's, you know, burglary tools, there's, you know, certain kinds of, you know, fully automatic machine guns. There's a range of things that are illegal to possess. Or, you know, golden eagle feathers. There's a statute that makes the possession of those illegal. So you would say it has to be – the statute would have to specifically say that it's illegal to possess before this exception would kick in? Yes. Yes, I would say that that would – that's the proper reading. Doesn't contraband – isn't contraband a term of art? I believe it – I believe it is. It has a much broader definition than what you're giving it. Isn't that correct in the case law? Well, the case law has never – I mean, hasn't really struggled with, you know, how to define contraband. If you look at the way that contraband – because it wasn't really a statutory term of art prior to this. If you look at the cases that are talking about contraband, per se, and derivative contraband, you know, they're saying, okay, this – they use it sort of haphazardly. The car in one 1958 Plymouth is treated as contraband. But it's clearly this type of property, you know, even though it got referred to in a Supreme Court case, you know, as contraband, you know, derivative contraband, it's clearly this type of property that Congress was interested in protecting when it enacted Kafferitz. You know, the car, Grandma's car that gets used by Sun in a dope deal. You know, the policy implications here are that if we just look back through it and we look for every time a court interpreted contraband in one way or another, there wouldn't be any kind of principled distinctions because contraband hasn't been used in the past. Well, contraband is also defined as illegal importing or exporting of goods. I agree. And I think it's unlikely – as an initial matter, I think it's unlikely that Congress intended that that application apply in this case, you know, in this statute, for a couple of reasons. The first of which is it was not intended to apply to customs laws. They carved that out from CAFRA. So, you know, whether they intended for it to apply to customs laws is sort of, I guess, problematic to start with. Secondly, I guess, you know, if you had a situation where they treated imported stuff differently from domestic stuff, you'd have a situation where the Lacey Act would be, you know, forfeiture under the Lacey Act would be different based on whether the property was a domestic violation, a violation of State or Indian regulations, or a foreign violation. And it's hard to imagine that they intended this kind of dichotomy to be in play. Finally, if you, you know, if you looked back, you know, just to cases that haphazardly used the term contraband, you wouldn't be coming up with some kind of principle definition of the term contraband. I think the best place to look for what Congress intended by the term contraband is elsewhere in CAFRA. If you look at the portions of CAFRA that refer to, for example, the ability to get pretrial release, now, most property that's subject to forfeiture, you've got the possibility of pretrial release under 983F. You can't get that kind of pretrial release in the case of contraband. In another instance, if the notice requirements of 983A are not met, the property has to be returned. That's not the case with contraband. Now, why the reasons for these differences? Why these limitations? You know, why, when anything else, no matter how, what kind of evil it's connected with, can be returned. Why can't you return contraband? It's because contraband is something in which people can't assert legitimate ownership interest in. And I think that's what the contraband or other property that it is legal to possess refers to. It's something that people just aren't allowed to have. They can't say we own it, we have the right to possess it. We can't give it back to them. And does the Court have any more questions? If not, I'll reserve the balance of my time. Thank you. Thank you, Your Honor. Good morning, Your Honors. Good morning. May it please the Court, my name is Peter Mueller. I'm representing the United States this morning with respect to this case. Appellants would have you decide this case, I submit, on the basis of a House bill that was never actually enacted by the Congress. They rely on the House Report 10692, which was reporting on the original version of H.R. 1658 in 1999, for the principle that the original version of H.R. 1658 was that the innocent owner defense in CAFRA applies to all Federal forfeiture statutes across the board. However, that bill did not contain the crucial language which the Court has asked to interpret this morning, that is, the contraband exemption from the innocent owner defense. So the statement in the House Report, as noted by the Supreme Court subsequently in the Rucker case, is really not good legislative history and the Court shouldn't rely on it. Is this stuff contraband or is it other property that is illegal to possess? I think it's contraband, Your Honor, because the legislative history of the Lacey Act makes clear that the products imported, acquired, received, transported, which have been or were previously taken in violation of State or Federal or foreign law, are contraband. And they use the term specifically on multiple occasions in the legislative history. What would be property that would be otherwise illegal to possess? Well, for example, a box cutter, a knife within the confines of the security area of an airport. A firearm that was not a National Firearms Act firearm, an ordinary firearm in the possession of a convicted felon. You mean property that you'd have to look to the circumstances to figure it out one way or the other? Yes, Your Honor. Well, why isn't the CRAB like that? Well, there's a rational argument that can be made that it is like that. However, the courts, subsequent to the Lacey Act, repeatedly and unequivocally termed Lacey Act products contraband. And over and over again, the courts have held that it was contraband. And when Congress enacts a statute that exempts contraband, uses the word contraband, they're deemed to be using that word against the background of the judicial construction of the word. You know, Judge Paez says it's a term of art. It occurs to me that it is, and it's also been used kind of loosely, too. I mean, it's contraband to have a camera here in the courtroom, for example. Well, that would be certainly would be property illegal to possess because it's illegal under the circumstances. Does it matter to you whether we hold it's contraband or that it falls into the other property that's illegal to possess? Well, I just think that the body of case law behind the Lacey Act supports the finding that it is contraband in a more compelling way than having to speculate about what they meant by other property illegal to possess. I agree with Judge Wallace that that's clearly a disjunctive use of the term when they use or. And there are certain kinds of property that you can talk about which may be not contraband but are illegal to possess because of the circumstances surrounding  And I've given a couple of examples. Okay. I understood Mr. Coleman to say the problem with calling a property that's otherwise illegal to possess is that there's no statute that says you can't possess this. Well, but the Lacey Act, first of all. It covers importation. It covers other things. It doesn't cover possession. Well, among the things it covers is receipt and acquisition. And it's just completely nonsensical to imagine that you could receive or acquire something and not possess it. So, you know, that's a matter of semantics. And the Lacey Act makes criminal the receipt and acquisition of wildlife or fish products which have been possessed in violation of state or foreign law. One of the antecedent offenses that triggers the Lacey Act is possession in violation of a law of wildlife and fish products. Have there been any cases that have specifically defined the second part of the disjunctive phrase? Not yet. This may be the first. So if we chose to look at that, it would be first impression so far as you know in the country. Yes, sir. And has there been any cases that have even described what it means? I don't think so, Your Honor. I couldn't find anything in legislative history referring to it either. So assuming that the Congress knows what it's doing, which we make that assumption when they write statutes, this must mean something. Well, and I suggest it means something akin to firearm in the possession of a convicted felon or a knife within a confined security area, a camera in the courtroom. If it's a property that's illegal to possess, does it necessarily have to be criminal to be illegal to possess? No, it doesn't. And that's another distinction. Because appellants argue that what Congress meant was contraband per se. And contraband per se is defined as property that is the possession of which is always criminal. And there's a distinction between property that's illegal to possess and property that's possession of which is criminal. Well, that's back to the derivative contraband issue. What I'm trying to do is focus just on the second part. As I understand it, under the Lacey Act, it's illegal under strict liability to possess the crab in this case. I was surprised when your adversary argued that it wasn't. What's the position of the government? Well, under the circumstances of this case, we don't get to possession because the crab was seized during the course of importation, which is another one of the offenses involved in the Lacey Act. But as I say, if the crab got across the border and was received by the appellants at that point, that would also be a violation of the Lacey Act. And receiving something is tantamount to, if not equivalent, to possession. Let's assume that Deep Sea really doesn't know everything that was going on out in the Pacific. Let's change the facts of this case where they weren't greatly involved in selling boats and having masters on board and the rest of that. Let's just assume that Deep Sea in this position merely purchased the product as it came across the border. Now, would that crab be seizable by the government? Yes, Your Honor, because it was taken, possessed, transported in violation of Russian law. So your position is then, because there's strict liability under the Lacey Act, that it was illegal to possess this even if a person didn't know where it came from? That it was illegal to import, transport, receive, or acquire. Suppose Deep Sea somehow managed to get it across the border and sold it to Safeway, and then I go to Safeway and I buy the crab that's in my freezer. Would that be subject to forfeiture? Well, we don't have to go there in this case, Your Honor. I think it's interesting to observe that every single reported Lacey Act forfeiture case from 1981 forward involves seizure and forfeiture of products that were intercepted at the border for the exception of one, and that was product that was traced from the border to the importer and seized from him. Would my possession of that crab in my refrigerator be subject to a forfeiture? That's a very interesting question. I think Article 2 would protect you as a matter of normal property law, the Uniform Commercial Code, because you're buying it. What I'm trying to get at is, is it contraband when it's sitting in my freezer? Conceptually, you can say it is. Or is it property that's illegal to possess? We're talking about what's inherent in this item that's taken. Well, you see, here's the issue. The seafood, the crab, the contraband fish like in the salmon case that was before this Court, it becomes contraband when it's taken in violation of law. So it's, I mean, it's illegal to begin with. And therefore, if any of the things that happen that are defined in the Lacey Act happen following that illegal taking, it's seizable as contraband and forfeitable. If I go to Safeway and buy this stuff and take it home and they give me change that's also counterfeit money, the counterfeit money in my wallet from the Safeway transaction is contraband, right? It is. That's subject to forfeiture. It is. No, it's an honored offense. And the fish that's in my, the same as the stuff that they import that's stuck in my freezer. Well, conceptually it could be, but such a case has never arisen and it's not likely to. But it helps us understand whether it's contraband or just another property, wouldn't it, if we can figure that out? Well, I think you see that, as I point out in my brief, the distinction between contraband per se and derivative contraband is not helpful here. We're not talking about derivative contraband because that's something property that's not helpful. The crab in Judge Silverman's freezer would not be derivative contraband. No, certainly not. Why are you resisting getting his crab out of his freezer? It seems to me that if it was tainted from the beginning, it doesn't become untainted. It may never happen, but he's asking you a question of whether it's going to change someplace along the line. I don't know how you can. Under the terms of the statute and the way that the law has been created, it's contraband because of its unlawful taking out. No, no. That contraband, just stay with this illegal to possess. You're saying it was illegal for Deep Sea to have it regardless. And if you acquire it, the Lasiak says, he acquired it. Now, it may have gone from Deep Sea to Safeway to Judge Silverman's wife to Judge Silverman to the freezer, but why would it not still be contraband that was acquired under Lasiak? Well, I think conceptually it is. You know, what I'm trying to get at is that there's really a third category of materials that's not handled by the contraband per se, derivative contraband distinction. It begins to be touched on in Judge Stevens' dissent in Venice. I didn't think I asked the question whether it was contraband or derivative contraband. I asked you whether it's property that is illegal to possess. Well, possession, if you use that word, I think, no, it's illegal to acquire. It's illegal to receive. And that's ten amounts of possession in my book. But as I point out, the Lasiak has never been enforced to that extreme, and the Court can look long and hard and will never find a case where some product has been taken out of anybody's freezer. The – so that's not the case before us, and we just don't have to reach those issues. Your Honor, I would, however, like to point out that this case does involve a sophisticated international seafood poaching and smuggling attempt. The defendant crab was worth between $1 and $2 million on the international wholesale food market. I gather it's in some deep freezer someplace. Is that right? Pardon me? It's in some freezer someplace. Is that correct? No, Your Honor. It's been – it would deteriorate and become – It's been sold on the market? It's been sold. We're struggling over the proceeds here, just like the lobster case, which is cited to you. But this law – this product was taken in blatant violation of Russian marine resource management laws. And it was clandestinely spirited out of their exclusive economic zone. It was attempted to be smuggled into the United States for marketing in this country. The claimants in this case were in privity with those who violated the Russian laws. And this is precisely the kind of case that the Lacey Act was designed to deal with and was one of the major concerns expressed by the members of Congress who supported it. I suggest that the exemption in CAFRA for contraband clearly covers this product and that Congress in CAFRA would not have intended to completely gut one of the major enforcement efforts of the Lacey Act without even mentioning it. Are there any further questions? Thank you, Mr. Feiler. Thank you, Your Honor. Mr. Colvin, you get the last word. Thank you. I wanted to briefly address a couple of the comments that opposing counsel made. Initially, I would reiterate that while the Lacey Act criminalizes a number of things, the importation, the sale, et cetera, et cetera, the acquisition, it does not criminalize the mere possession. Thus, I don't think it falls into that category of property that is illegal to possess. It's not like the Golden Eagle feathers. It's not like the heroin. It's not something that can be taken away from you just because you possess it. Now, the courts, there are three or four cases in the 20-year history that have referred to Lacey Act stuff as contraband in passing, and I think all of those have been referring back to the 1981 legislative history of the Lacey Act amendments where the court, I mean, Congress in describing the strict liability system it was setting up said, you know, thus, for forfeiture purposes, this product will be treated as in effect contraband. And I think the key language there is in effect. They were setting up a system that, you know, at the time was a strict liability system, and we're describing it as being in effect contraband. And yet the case law that follows that is simply referring back to that legislative history, and they're describing it as, you know, in accordance with the legislative history. It's not some independent judgment on the part of the courts. There's no indication that Congress was aware of this. I think the provenance of this, of the phraseology in those cases is somewhat difficult. And I know in the recent, in the 28J case letter that opposing counsel sent in, he cited one Tenth Circuit case dealing with Golden Eagle feathers. And in that case, I know that the possession of those Golden Eagle feathers was illegal under a separate statute other than the Lacey Act. So I think that one is one that I think would fairly fall into this category  But I think the remainder of them, you know, there was no, it was just another indication of, you know, courts sort of loosely using the term contraband without any real regard, because there wasn't any consequence. Basically, the term, the Latin term, it comes from meaning against the law. And I think it's up to this Court to come up with a, you know, a principled reading of what that term would be that doesn't depend on, doesn't make litigants have to go and make a guess as to whether or not this property hasn't been referred to enough in the case law in the past history as contraband or not to make it such that if it falls outside of the innocent under defense, you know, given that there is this category of derivative contraband out there, I would say probably the world of potentially forfeitable objects has been described as contraband at some point or another in the case law. And I think if this Court accepts counsel's invitation to read it that way, you would basically be getting rid of the innocent under defense in its entirety. Now, forfeiture statutes are to be construed strictly against the government because of their quasi-punitive nature. It follows that the phrase contraband or other property that it's illegal to possess should be given its – construed against the government, given its narrowest meaning. If the Lacey Act itself doesn't criminalize the possession of this property, I think it's the end of the inquiry. In 2000, when Congress enacted the sweeping changes to all Federal forfeiture laws, it exempted out some statutes. It didn't exempt out the Lacey Act. CAFRA's innocent owner defense applies unless the King Crabs contraband or other property that it's illegal to possess, given the language of the statute and the policy reasons underlying the quotation of the innocent owner defense. Let me interrupt you to ask you a question. I know your time is going quickly. In the legislative history to the Lacey Act on Section 3372, it's the Senate report on the Lacey Act says the Act provides for forfeiture of the fish, wildlife, and plants on a strict liability basis because the merchandise is, in effect, contraband. Yes, Your Honor. So doesn't this buttress the government's position that because of the strict forfeiture law, it is, in effect, contraband, and therefore, you're not allowed to have the innocent exception? Well, I think – I think prior to the creation of the innocent owner defense, that was correctly describing what the law was like. It was treating it as, in effect, contraband. You got the same treatment as you did for heroin with strict liability forfeiture. They took it away from you. You didn't have any rights to contest it based upon your personal culpability. But it is – is it contraband? No, I don't believe it is contraband. What do you do with the specific language of the Senate report that says it is, in effect, contraband? Well, if it's the in effect portion of it, it means that it's being treated similarly to contraband. It means they're calling it contraband, doesn't it? No. I think they're describing the situation that they're treating it similarly to. I don't believe they're saying this is contraband. And there wasn't a statutory meaning to the word contraband at the time. There's no reference frame as to what they would have meant by contraband. It could have been, you know, the derivative contraband of earlier case laws. It's hard to tell exactly, you know, what they were shooting for, because there   The question is, does the Senate report have some statutory history that supports your position as distinguished from the Senate report? I think – I think that's pretty much it on the forfeiture. I think there's only like a paragraph or two in that report that describes it. Okay. Judge Pines? Thank you, Mr. Colvin. We're done. Thank you. The case just argued is submitted. Thank you, gentlemen.
judges: Wallace, Silverman, Paez